**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BLANCA CARRILLO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-00147-PRM-ATB** |
| | § | |
| **ROICOM USA, LLC,** | § | |
| **Defendant,** | § | |

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND TO STAY
PROCEEDINGS PENDING ARBITRATION**

On this day, the Court considered Defendant's Motion to Compel Arbitration and to Stay
Proceedings Pending Arbitration ("Defendant's Motion"), filed by Defendant ROICOM USA,
LLC ("ROICOM").  On July 29, 2020, this matter was referred to this Court by United States
District Judge Philip Martinez for Determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule
1(c) of Appendix C of the Local Court Rules of the United States District Court for the Western
District of Texas.  (ECF. No. 9).

For the reasons set forth below, **IT IS HEREBY ORDERED** that Defendant's Motion to
Compel Arbitration and to Stay Proceedings Pending Arbitration is **DENIED**.

## I.    BACKGROUND

### a.    Procedural Background

"Plaintiff's Original Complaint" ("Complaint") was filed in the United States District
Court for the Western District of Texas, El Paso Division, on May 21, 2020, by Plaintiff Blanca
Carrillo ("Carrillo"), alleging claims of retaliation under the False Claims Act pursuant to Title 31
U.S.C. §3730(h).  (ECF No. 1).  On July 27, 2020, ROICOM filed Defendant's Motion seeking to
stay the proceedings and to immediately refer it to binding arbitration pursuant to an arbitration
agreement.  (ECF No. 8, p. 3).

1

After being granted an extension of time to file her response (Text Order dated July 31, 2020), Carrillo filed her "Plaintiff's Response in Opposition to Defendant's Motion for Stay and to Compel Arbitration" ("Plaintiff's Response") on August 10, 2020.  (ECF No. 13).  Thereafter, ROICOM filed "Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration" ("Defendant's Reply") on August 17, 2020.  (ECF No. 15).

After being granted leave to file her surreply (Text Order dated August 24, 2020), Carrillo filed her "Plaintiff's Surreply in Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Stay and to Compel Arbitration" ("Plaintiff's Surreply") on August 24, 2020.  (ECF No. 19).  After being granted leave to file its surreply (Text Order dated August 31, 2020), ROICOM filed its "Defendant's Surreply to Plaintiff's Surreply in Opposition to Defendant's Motion to Compel Arbitration" ("Defendant's Surreply") on August 31, 2020.  (ECF No. 21).

**b.    Factual Background[1]**

The undisputed facts of this case are as follows, unless otherwise noted:

In the fall of 2017, Carrillo was hired by ROICOM to conduct quality control.  (ECF No. 13-1, p. 2); (ECF No. 13, p. 1).  ROICOM is a company which creates equipment and uniforms for United States military personnel.  (ECF No. 1, p. 2 ¶ 7); (ECF No. 5, p. 2 ¶ 7).  ROICOM is a related company of ReadyOne Industries, Inc. ("ReadyOne").  (ECF No. 1, p. 2 ¶ 6) ("ROICOM is the for-profit sister company to ReadyOne Industries, Inc."); (ECF No. 5, p. 2 ¶ 6) (ROICOM "is a wholly – owned [sic] subsidiary of ReadyOne Industries, Inc.").

---

[1] While recounting the factual background, the Court addresses only the facts relevant to this Order.

When Carrillo was hired by ROICOM, a company representative ("Representative")[2] handed Carrillo a one-page document "Receipt and Arbitration Acknowledgement" ("Acknowledgement Form") for her signature, along with numerous other forms. (ECF No. 13-1, p. 2). According to Carrillo, the ROICOM Representative knew that Carrillo did not speak or read English, and the two spoke with each other exclusively in Spanish.[3] (*Id.*). When presenting the Acknowledgement Form to Carrillo, the ROICOM Representative informed Carrillo that she "had to sign this document to be able to register and be put on payroll with ROICOM." (*Id.*). The ROICOM Representative also told Carrillo that she "had to sign the document to be able to work at the company." (*Id.* at p. 3).

Attached to Defendant's Motion in the initial affidavit of Ronaldo Alvarez ("Alvarez"), the Director of Human Resources and Compliance for ReadyOne, ROICOM provides the Acknowledgement Form, written exclusively in English, with Carrillo's signature on it. (ECF No. 8-1, p. 13). The Acknowledgement Form states that by signing the document, "[the employee] acknowledge[s] that [they] have received ad [sic] read (or had the opportunity to read) the Mutual Agreement to Arbitrate Claims, effective October 01, 2007." (*Id.*)[4]

In Plaintiff's Response, Carrillo asserts that the Acknowledgement Form she received was only in English. (ECF No. 13, p. 5). However, in Alvarez's amended and supplemental affidavit attached to Defendant's Reply, Alvarez asserts that the Acknowledgement Form is "a two — sided [sic] document in English on one side and Spanish on the other. Ms. Carrillo signed the English

---

[2] Carrillo indicates the Representative was "a person named 'Kristy' from Human Resources of ROICOM." (ECF No. 13-1, p.2). ROICOM does not provide any evidence regarding the identity or actions of the Representative. *See* (ECF No. 15).

[3] Carrillo states in her affidavit that she "do[es] not speak or read English[, and she] only speak[s] or read[s] Spanish." (ECF No. 13-1, p. 2).

[4] Although the Acknowledgement Form misidentifies the title of the arbitration agreement as "Mutual Agreement to Arbitrate Claims" instead of "Mutual Agreement to Arbitrate," neither party asserts this misidentification is material to the legal status of the arbitration agreement.

side . . . .  [T]he document signed by Ms. Carrillo *contained* both an English side and a Spanish side." (ECF No. 15-1, p. 3) (emphasis added).  The Spanish-language Acknowledgement Form, however, is unsigned and does not contain any of Carrillo's identifying information.  (*Id.*).

Even with the newly produced Spanish-language Acknowledgement Form, "Carrillo stands behind her affidavit testimony that she was only provided the 'Acknowledgement Form' in English – not in Spanish." (ECF No. 19, p. 6).  According to Carrillo, she only signed the English version of the Acknowledgement Form because she relied upon the ROICOM Representative's representations about the Acknowledgement Form and thus believed it was "necessary to make sure that [she] was going to be registered on the company's payroll." (ECF No. 13-1, p. 3).

ReadyOne keeps, in its regular course of business, English and Spanish-language versions of the "Mutual Agreement to Arbitrate" ("Arbitration Agreement"), which is the "arbitration program adopted by ReadyOne on October 1, 2007, for all employees, including affiliated companies of ReadyOne such as ROICOM." (ECF No. 15-1, p. 3).  ROICOM has never provided Carrillo with an English or Spanish-language copy of the Arbitration Agreement, nor has Carrillo ever seen or been given the opportunity to review the Arbitration Agreement in English or in Spanish.  (ECF No. 13, p. 2); *see* (ECF No. 15-1, p. 2-3).

## II.   LEGAL STANDARDS

### a.   Motion to Compel Arbitration

Section 2 of the Federal Arbitration Act ("FAA") provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, the court must perform a two-step inquiry to determine whether to compel a party to arbitrate.  *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009).  "[T]he first task of a court asked to compel

arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) ("In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute.").  The second step for the court to determine is "whether federal statute or policy renders the claims nonarbitrable."  *Dealer Computer Services*, 588 F.3d at 886.

Courts divide the first step of the analysis—whether the parties agreed to arbitrate the dispute in question—into two separate determinations:  "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Title v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)); *see also Dealer Computer Services*, 588 F.3d at 886 ("The courts divide the first step into two more questions:  whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement.").  Due to the "federal policy favoring arbitration," the "ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration."  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989); *see also Fleetwood Enterprises*, 280 F.3d at 1073 ("In determining whether the dispute falls within the scope of the arbitration agreement, ambiguities are resolved in favor of arbitration.") (internal quotes and punctuation omitted).  "However, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound."  *Fleetwood Enterprises*, 280 F.3d at 1073 (internal quotes omitted); *see*

*also Volt Information Sciences*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.").

The Supreme Court has held that, since the FAA is merely a "policy guaranteeing the enforcement of private contractual arrangements, [courts should] look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (internal citations omitted).  Furthermore, the Court reiterated that "[i]t goes without saying that a contract cannot bind a nonparty."  *Id.*  Finally, in resolving issues regarding the existence of an agreement to arbitrate, the Fifth Circuit has held that "courts apply ordinary *state-law* principles that govern the formation of contracts."  *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (emphasis added).

### b.      Magistrate Judge Authority

When a court considers a motion to compel arbitration and there is "a challenge to contract enforcement or validity [of the arbitration agreement's contents], the argument is properly heard by the arbitrator . . . [but if there] is a question of contract formation, the court may hear it." *Maravilla v. Gruma Corporation*, 783 F. App'x 392, 395 (5th Cir. 2019); *Dealer Computer Services*, 588 F.3d at 886-87 ("the courts generally do not delve further into the substance of the parties' disputes"); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that if the claim "goes to the 'making' of the agreement to arbitrate . . . the federal court may proceed to adjudicate it"); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("In deciding whether the agreement to arbitrate exists, federal courts do not consider general challenges to the validity of the entire contract . . . [but] are permitted to consider arguments about contract formation."); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 939

(S.D. Tex. 2001) ("a claim of procedural unconscionability . . . [is] for the Court to decide when

[it] relate[s] specifically to the arbitration clause").

> Section 3 of the FAA provides in relevant part:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (emphasis added).

> Section 636(b)(1) of Title 28 of the United States Code grants magistrate judges the

authority to consider and handle both non-dispositive and dispositive pretrial matters, subject to

different standards of review by a district court judge.  Section 636(b)(1)(A) permits a district

judge to "designate a magistrate judge to hear and determine any pretrial matter before the court,"

except for:

> a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. 636(b)(1)(A).  The district judge may review and reconsider any pretrial matter decided

by a magistrate judge under the authority of subparagraph (A) when "it has been shown that the

magistrate judge's order is clearly erroneous or contrary to law."  *Id.*

> In addition to Section 636, Federal Rule of Civil Procedure 72 outlines a magistrate judge's

authority regarding pretrial matters while distinguishing between dispositive and non-dispositive

matters.  It provides that "[w]hen a pretrial matter not dispositive of a party's claim or defense is

referred to a magistrate judge to hear and decide, the magistrate judge must . . . when appropriate,

issue a written order stating the decision."  Fed. R. Civ. P. 72(a).  Further, "[t]he district judge in

the case must consider timely objections [to the magistrate judge's order] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* However, for dispositive motions, "[t]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1).

The Supreme Court has held that the Constitution requires that Article III judges exercise final decision-making authority. *U.S. v. Raddatz*, 447 U.S. 667, 682-83 (1980). Given the constitutional concerns regarding magistrate judges making dispositive rulings, courts do not confine application of Section 636(b)(1)(B) to the eight "exceptional motions" listed in Section 636(b)(1)(A); rather, "they instead key their review to the underlying considerations of the dispositive-nondispositive dichotomy." *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *2 (N.D. Tex. Dec. 21, 2015) (internal quotes omitted).

The Fifth Circuit has not directly ruled on whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of 28 U.S.C. § 636. *Lee v. Plantation of Louisiana, L.L.C.*, 454 F. App'x 358, 360 n 3 (5th Cir. 2011) ("[W]e need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order."). However, other circuit courts, including the First and Third Circuits, have concluded that a motion to compel arbitration is a non-dispositive motion within the jurisdiction of a magistrate judge. *See*, *e.g.*, *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133-34 (3d Cir. 2014); *Next Step Medical Co., Inc. v. Johnson & Johnson Intern.*, 619 F.3d 67, 69 n. 2 (1st Cir. 2010) ("In this circuit, motions to compel arbitration are non-dispositive motions."); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13-14 (1st Cir. 2010).

Additionally, all four federal judicial districts in Texas have held motions to compel arbitration to be non-dispositive matters. *See*, *e.g.*, *Campanile Investments LLC v. Westmoreland Equity Fund LLC*, No. SA-17-CV-00337-FB, 2019 WL 2213877, at *1 n. 2 (W.D. Tex. May 22, 2019) ("Because the denial of a motion to compel arbitration is non-dispositive, the [magistrate judge] can issue an order rather than a report and recommendation."); *Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017) (holding that a motion to compel arbitration is non-dispositive); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12–CV–572–JRG, 2016 WL 7157421, at *2 (E.D. Tex. Dec. 7, 2016) (finding the magistrate judge's order regarding the motion to compel arbitration to be "a nondispositive matter"), *aff'd*, 878 F.3d 488 (5th Cir. 2017), *vacated and remanded on other grounds*, 139 S. Ct. 524 (2019); *Tige Boats*, 2015 WL 9268423, at *3 ("Because the Magistrate Judge did not recommend dismissal, the Court views the motion as nondispositive in nature.").

Finally, no circuit court has held that a motion to compel arbitration is a dispositive motion outside the jurisdiction of a magistrate judge. Like the Fifth Circuit, the Eleventh Circuit recently declined the opportunity to hold that magistrate judges do not have the authority to issue orders regarding motions to compel arbitration. *Getz v. ViaSat Inc.*, No. 19-11117-FF, 2019 WL 2613183, at *1 (11th Cir. May 13, 2019) (holding that the Eleventh Circuit lacked jurisdiction to hear direct appeal of magistrate judge's order denying a party's motion to compel arbitration and to stay or dismiss proceedings while not addressing the issue of whether the magistrate judge's order was dispositive or nondispositive).

## III.   ANALYSIS

In Plaintiff's Response to Defendant's Motion, Carrillo makes two arguments: (1) that Defendant's Motion must be denied because ROICOM failed to establish that an arbitration

agreement exists between Carrillo and ROICOM; and (2) that Defendant's Motion must be denied because the Arbitration Agreement is procedurally unconscionable.

> **a.    An Arbitration Agreement Facially Exists Between Carrillo and ROICOM**

Carrillo first argues that Defendant's Motion should be denied because ROICOM fails to establish that an arbitration agreement exists between ROICOM and Carrillo.  (ECF No. 13, p. 3).

The question of "whether there is a valid agreement to arbitrate between the parties" is determined according to state law.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Webb*, 89 F.3d at 258); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when deciding whether the parties entered into an agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Both parties agree that Texas state law applies.  *See* (ECF No. 13, p. 3) (Carrillo applying Texas state law to this issue); (ECF No. 15, p. 2-3) (ROICOM applying Texas state law to this issue).

Under Texas state law, "the party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate."  *Trujillo v. Volt Management Corp.*, EP-19-CV-00337-DCG, 2020 WL 1906097, at *2 (W.D. Tex. Apr. 17, 2020); *see also Kmart Stores of Texas, LLC v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App. 2016) ("The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration.") (quoting *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App. 2014)). Accordingly, ROICOM "must prove by a preponderance of the evidence" that an arbitration agreement exists.  *Trujillo*, 2020 WL 1906097, at *2.  "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."  *Banc One Acceptance Corp.*, 367 F.3d at 429.

Carrillo argues that ROICOM has not met its burden to establish that an arbitration agreement exists between Carrillo and ROICOM because "[t]he Arbitration Agreement does not contain Carrillo's signature and [it] references only one Company – ReadyOne Industries, Inc. [–] . . . [and] does not reference Defendant, ROICOM, Inc."  (ECF No. 13, p. 3) (citing ECF No. 8-1, p. 7).  Finally, Carrillo argues that ROICOM "has failed to show that Carrillo worked for or had any relationship with ReadyOne Industries, Inc. – the only Company to which the Arbitration Agreement refers."  (ECF No. 13, p. 3).  Thus, Carrillo claims that "the Arbitration Agreement does not establish an agreement between [the parties]."  (ECF No. 13, p. 3).

First, the Court addresses the issue of whether the Arbitration Agreement binds ROICOM. The Supreme Court of Texas has held that "arbitration agreements generally do not apply to all corporate affiliates."  *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007).  In *Merrill Lynch Trust*, two subsidiaries sought to compel arbitration under the arbitration clause found in agreements between the plaintiffs and the subsidiaries' parent company.  *Id.* at 187.  These agreements between the plaintiffs and the parent company "referred to some affiliates and third parties, but not [the defendant affiliates]."  *Id.* at 191.  In fact, the defendant affiliates "signed their own contracts with the plaintiffs, which had no arbitration clauses."  *Id.*  Therefore, the Supreme Court of Texas held that the defendant affiliates could not compel arbitration since "allowing these affiliates to compel arbitration would effectively rewrite their contracts."  *Id.*

Unlike *Merrill Lynch Trust*, the Court finds that the Arbitration Agreement binds ROICOM as an affiliated company of ReadyOne.  First, the Arbitration Agreement defines "Company" as ReadyOne as well as "*affiliates or related companies*" of ReadyOne.  *Compare* (ECF No. 15-1, p. 4) (emphasis added), *with Merrill Lynch Trust*, 235 S.W.3d at 191 (where arbitration agreement did not refer to defendant affiliates).  It is undisputed that ROICOM is a *related* company of

11

ReadyOne. (ECF No. 1, p. 2 ⁋ 6) ("ROICOM is the for-profit sister company to ReadyOne Industries, Inc."); (ECF No. 5, p. 2 ⁋ 6) (ROICOM "is a wholly — owned [sic] subsidiary of ReadyOne Industries, Inc."). Second, both Alvarez's sworn original and amended affidavits allege that the Arbitration Agreement was "adopted by ReadyOne on October 1, 2007, for all employees, including affiliated companies of ReadyOne such as ROICOM." (ECF No. 8-1, p. 1); (ECF No. 15-1, p. 3).

Carrillo argues that the Supreme Court of Texas has found that "corporate affiliates are generally created to separate the businesses, liabilities, and contracts of each. Thus, a contract with one corporation – including a contract to arbitrate disputes – is generally not a contract with any other corporate affiliates." (ECF No. 13, p. 3) (quoting *Merrill Lynch Trust*, 235 S.W.3d at 191) (internal citations omitted). However, this general principle is not applicable in the instant case since the Arbitration Agreement specifically referred to "all . . . affiliated or related companies of [ReadyOne]." (ECF No. 15, p. 4). Consequently, the Court finds that ROICOM has met its burden in establishing that ROICOM was a party to the Arbitration Agreement.

Next, the Court addresses the issue of whether the Arbitration Agreement applies to Carrillo. "Arbitration is a matter of contract and, generally, it cannot be compelled for an issue involving a non-signatory to the arbitration agreement." *Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp.3d 845, 851 (N.D. Tex. 2014); *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). Neither Carrillo's name nor signature appear anywhere on the English version or Spanish version of the Arbitration Agreement. *See* (ECF No. 15-1, p. 4-13). Instead, ROICOM has produced the Acknowledgement Form, signed by Carrillo, which states in pertinent part: "[b]y [the employee's] signature below, [the employee] acknowledge[s] that [the employee] received ad [sic] read (or had the opportunity to read) the [Arbitration Agreement] . . . ." (ECF

No. 15-1, p. 14).   Additionally, the Acknowledgement Form states in pertinent part that the employee "acknowledge[s] that [the Acknowledgement Form] includes a mandatory company policy requiring that certain claims or disputes (that cannot otherwise be resolved between the Company and [the employee]) must be submitted to an arbitrator, rather than a judge and jury in court."  (ECF No. 15-1, p. 14).

Given that Carrillo began working at ROICOM in the fall of 2017, the Arbitration Agreement, which was adopted by ReadyOne and ROICOM continually since October 1, 2007, was in effect at the beginning and throughout the time of Carrillo's employment.  (ECF No. 1, p. 2 ¶ 8) ("Carrillo started working at ROICOM in or around October 2017 . . ."); (ECF No. 5, p. 2 ¶ 8) ("[ROICOM] admits [Carrillo] started working at ROICOM in or around November 2017 . . ."); *see* (ECF No. 15-1, p. 3) (the Arbitration Agreement was "adopted by ReadyOne on October 1, 2007, for all employees, including affiliated companies of ReadyOne such as ROICOM."). Even after Carrillo's termination from ROICOM, the Arbitration Agreement is still applicable to Carrillo as the Arbitration Agreement provides that the "Agreement shall survive the employer-employee relationship between the Company and the Claimant and shall apply to any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company . . . ."  *See* (*Id.* at 7).  Assuming, *arguendo*, that the Acknowledgement Form is a valid contract between Carrillo and ROICOM, the Court finds that the Acknowledgement Form provides sufficient support for ROICOM's assertion that Carrillo was a signed party to the arbitration agreement.

Finally, the Court addresses the issue of whether there was an agreement *between* ROICOM and Carrillo.  "Although a party may argue a contract was never formed, by signing a contract, he is presumed to have read it and grasped its contents and legal effects."  *ReadyOne*

*Industries, Inc. v. Casillas*, 487 S.W.3d 254, 258 (Tex. App. 2015) [hereinafter *ReadyOne 1*].  In

*ReadyOne 1*, the Texas Court of Appeals held that the party "satisf[ied] its evidentiary burden by

submitting . . . copies of [the arbitration agreement] and the [signed] Receipt and Arbitration

Acknowledgement [both of which were authenticated by affidavit] in support of its motion to

compel." *Id.* at 258-59.  Just as in *ReadyOne 1*, ROICOM has produced the Arbitration Agreement

and a signed Acknowledgement Form, which are authenticated by Alvarez's affidavits.  *See* (ECF

No. 8-1).  The Court notes that the Acknowledgement Form, which has "ROICOM USA, LLC"

printed on the top above the title, contains Carrillo's signature and "ROICOM" listed as Carrillo's

work location in the signature block.  (ECF 15-1, p. 14).  These contents on the Acknowledgement

Form provide enough evidence for ROICOM to meet their initial burden of establishing an

agreement between ROICOM and Carrillo,[5] absent any meritorious defenses to formation of the

agreement.

Assuming, *arguendo*, that the Acknowledgement Form is a valid contract, the Court finds

that ROICOM has met its initial burden in establishing that there was an arbitration agreement

between Carrillo and ROICOM.[6]

### b.      The Arbitration Agreement is Procedurally Unconscionable

Carrillo argues that Defendant's Motion should be denied because the Arbitration

Agreement is procedurally unconscionable.  (ECF No. 13, p. 4).  ROICOM has met its initial

burden of showing that an agreement to arbitrate exists, and Carrillo has not argued that her claim

falls outside of its scope.  Consequently, the presumption favoring arbitration has attached and the

---

[5] Even if the Arbitration Agreement is not directly between Carrillo and ROICOM, ROICOM would still be able to compel arbitration as a third-party beneficiary.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) ("A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit.").

[6] Since Carrillo does not argue that her claims fall outside the scope of the Arbitration Agreement, the Court finds that the scope of the Arbitration Agreement is not at issue in the instant case, and thus will not be addressed.  (ECF No. 15, p. 3 n. 1); *see* (ECF No. 13).

burden now shifts to Carrillo to establish her defense of procedural unconscionability. *See Carter*, 362 F.3d at 301 ("The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement.") (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)).

"In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter*, 262 F.3d at 301 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  As a result, Texas state law is the applicable law "to determine whether the arbitration agreement[] here [is] unconscionable." *Carter*, 362 F.3d at 301.

"Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d at 571); *see also TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App. 2007) (procedural unconscionability relates to the making or inducement of the contract, focusing on "the facts surrounding the bargaining process").

"'Unconscionability' has no precise legal definition because it is not a concept but a determination made in light of a variety of factors." *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App. 2013) (citing *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J. concurring)).  Courts analyze the following factors in determining whether a contract is unconscionable:

> (1) the 'entire atmosphere' in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the 'non-bargaining ability' of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable.

*Delfingen*, 407 S.W.3d at 798.  In applying the factors, "[t]he totality of the circumstances must be assessed as of the time the contract was formed." *Id.*  "A court may find procedural

unconscionability if the plaintiff presents evidence of the [employer's] 'overreaching or sharp practices' combined with the [employee's] 'ignorance or inexperience.'" *America Stone Diamond, Inc. v. Lloyds of London*, 934 F. Supp. 839, 844 (S.D. Tex. 1996) (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988)).   In different terms, "the circumstances surrounding the negotiations must be shocking" in order to find an agreement procedurally unconscionable.   *Delfingen*, 407 S.W.3d at 798.

> ### 1.   *Acknowledgement Form*
>
> ### A.   *Carrillo was unable to read the Acknowledgement Form*

Carrillo first argues that the Arbitration Agreement was procedurally unconscionable because she does not speak or read English and, therefore, could not understand the English version of the Acknowledgement Form's contents.

The Fifth Circuit has noted that "[t]he only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enterprises*, 280 F.3d at 1077; *see BBVA Compass Investment Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App. 2015) ("Situations that are procedurally unconscionable involve those in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English."); *see, e.g.*, *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App. 1999) (finding an agreement procedurally unconscionable where one of the parties was functionally illiterate, nobody explained the agreement to him, and the person who gave him the agreement to sign did not understand the agreement); *Prevot*, 133 F. Supp. 2d at 940–41 (S.D. Tex.

2001) (finding procedural unconscionability where the plaintiffs did not speak English and the agreement was not translated or explained to them).

In Carrillo's affidavit attached to Plaintiff's Response, Carrillo asserts that she "do[es] not speak or read English."  (ECF 13-1, p. 2).  ROICOM does not dispute that Carrillo could not read or speak English.  *See generally* (ECF No. 21, p. 9) (ROICOM's counsel acknowledged that he "was not made aware of Ms. Carrillo's contention that she did not speak English until [Plaintiff's Response containing Carrillo's affidavit.]").  Further, Carrillo asserts that because she "cannot read English" and the Acknowledgement Form's contents were written in English, Carrillo "[did] not know what the [Acknowledgement Form said]."  (ECF 13-1, p. 3).  As these claims are well supported and undisputed, the Court finds that Carrillo was incapable of understanding the contents of the English-language Acknowledgement Form.

### B.  *ROICOM's Representative misrepresented the contents of the Acknowledgement Form to Carrillo*

Carrillo next argues that ROICOM's Representative misrepresented the contents of the Acknowledgement Form when the Representative "affirmatively told Carrillo that the documents she was signing were simply 'to register and be put on payroll.'"  (ECF No. 13, p. 5) (citing ECF No. 13-1, p 2).  Carrillo asserts that she "believed the representative and relied on these statements to sign the Acknowledgement Form with the purpose of registering with the company – not to waive her right to a jury trial."  (ECF No. 13, p. 5).

For procedural unconscionability, the misrepresentation must rise to the level of an affirmative misrepresentation, constituting more than possession of superior bargaining power or evidence of an adhesion contract.  *See, e.g.*, *Carter*, 362 F.3d 294, 301 (5th Cir. 2004) (where Fifth Circuit held there was "no support in Texas law" for the argument that an arbitration agreement was procedurally unconscionable because a company "used its superior bargaining position to

17

coerce potential employees; that is, employees feared that they would not get the job unless they signed"); *Hafer v. Vanderbilt Mortg. & Finance, Inc.*, 793 F. Supp. 2d 987, 1002 (S.D. Tex. 2011) (noting that "the Fifth Circuit has repeatedly rejected the argument that the imbalance of power between the parties alone makes an adhesion contract unconscionable").

Contrary to the evidence before the Court, ROICOM asserts that ". . . [Carrillo] does not state that the Defendant's employee[7] *actually* misrepresented any terms contained in the documents . . . and that there is no evidence presented in [Carrillo's affidavit] that states Defendant affirmatively misrepresented the *contents* of the documents presented." (ECF No. 15, p. 4, 6) (first emphasis added) (second emphasis in original). ROICOM goes on to state that "[a]t most, [Carrillo's affidavit] states she needed to sign the documents 'to be able to register and be put on the payroll,' and 'to be able to work at [the] company,' 'at the beginning of employment.'" (*Id.* at p. 6).

Despite Defendant's conclusory contentions, it is clear to the Court that Carrillo was misled by the ROICOM Representative as to the contents of the English version of the Acknowledgement Form. According to the following undisputed facts by Carrillo:

1) the ROICOM Representative knew Carrillo did not speak or read English;
2) the ROICOM Representative informed Carrillo that " . . . she had to sign [the] document to be able to register and be put on payroll with ROICOM . . . [and] to be able to work at the company;"
3) the ROICOM Representative made no attempt to inform Carrillo that by signing the document she was agreeing to arbitrate and waive her right to jury trial;
4) the ROICOM Representative never gave or offered to give Carrillo a copy of the Acknowledgement Form or the Arbitration Agreement, either in English or in Spanish, despite the apparent existence of both; and
5) the ROICOM Representative never informed Carrillo that an Arbitration Agreement even existed so that Carrillo could have the opportunity to read it and ask questions about it.

(ECF No. 13-1, p. 2-3); *see* (ECF No. 15-1, 4-15).

---

[7] The Court assumes ROICOM is referring to the ROICOM Representative from Human Resources.

Furthermore, ROICOM contends that there are *several* cases that the Texas Court of Appeals has reviewed with "language similar" to Carrillo's assertion, "and that the court has held that such evidence is insufficient to avoid the obligation to arbitrate." (ECF 15, p. 4) (citing *In re ReadyOne Industries, Inc.*, 400 S.W.3d 164, 169 (Tex. App. 2013) [hereinafter *ReadyOne 2*];[8] *In re ReadyOne Industries, Inc.*, 420 S.W.3d 179, 186-87 (Tex. App. 2012) [hereinafter *ReadyOne 3*]). Again, despite ROICOM's contentions, the two cases provided by ROICOM *do not* involve similar language to the case here.[9]

In the first case relied on by ROICOM, *ReadyOne 2*, the Texas Court of Appeals rejected an employee's assertion that an arbitration agreement was misrepresented when he "just [didn't] recall," he "didn't know anything about this," "he didn't even know what arbitration is," "he doesn't speak English," and he was given "lots of documents to sign and that he signed them." *In re ReadyOne Industries, Inc.*, 400 S.W.3d at 169. The Spanish-speaking employee in *ReadyOne 2* was provided the Spanish *and* English-language versions of the pertinent documents, while Carrillo did not receive a Spanish *or* English-language version of the Arbitration Agreement. *Compare Id.* at 169, *with* (ECF No. 13-1, p. 3). Further, the employee in *ReadyOne 2* also signed the "Receipt and Arbitration Acknowledgement" that was in *Spanish*, while Carrillo signed the Acknowledgement Form that was in *English*. *ReadyOne Industries, Inc.*, 400 S.W.3d at 167, *with* (ECF No. 15-1, p. 14). Thus, whereas the employee in *ReadyOne 2* had ample opportunity to discover the nature of the documents he was signing had he simply read them, here Carrillo had

---

[8] There are several relevant cases in which ReadyOne is a party. Although these cases are not directly related to each other, the Court will refer to the cases using more descriptive names for ease of reading.

[9] Further, these two cases do not even address the issue of procedural unconscionability, but rather discuss fraudulent inducement in a different procedural context. *See In re ReadyOne*, 400 S.W.3d at 169 (reversing trial court's decision to order further discovery on plaintiff's fraudulent inducement defense to the arbitration agreement); *In re ReadyOne*, 420 S.W.3d at 186-87 (reversing trial court's decision to order discovery that was based upon employee's fraudulent inducement defense to the arbitration agreement).

no such opportunity because ROICOM never gave her the opportunity to review the Acknowledgement Form in a language she understood.

In the next case relied on by ROICOM, *ReadyOne 3*, the Texas Court of Appeals rejected an employee's assertion that an arbitration agreement was fraudulently induced when she "was given a few documents to sign during her brief orientation," "was only given signature pages and was not explained what the documents related to," and that she "assumed the documents related to her W-2 tax forms." *In re ReadyOne Industries, Inc.*, 420 S.W.3d at 186-87. The employee in *ReadyOne 3* was not a Spanish-speaker and was given the signature pages in a language she could read and understand. *Id.* Further, the employee's only contention is that her employer "failed to identify and explain the arbitration agreement to her," not that the employer "made a fraudulent representation that the documents she was asked to sign did not contain an arbitration provision or that the arbitration provision was something else." *Id.* at 187. In contrast, here, Carrillo was given the English version of the Acknowledgement Form, which she was incapable of reading, and was told by the ROICOM Representative that the Acknowledgement form was "something else" besides an arbitration agreement, namely that it was "to register for payroll." (ECF No. 13-1, p. 2-3).

The Court finds that the assertions in *ReadyOne 2* and *ReadyOne 3* do not constitute "language similar" to Carrillo's assertions. The Court further finds *ReadyOne 2* and *ReadyOne 3* distinguishable for the reason that in both of those cases, the employer made no misrepresentation regarding the document's contents. Rather, in each case, the plaintiff employee was simply unaware or assumed the contents of a document which the plaintiff employee had the opportunity and ability to read. In contrast, here, ROICOM's Representative misrepresented the contents of the Acknowledgement Form to Carrillo by telling her it was "to register for payroll" when in fact

the document referred to a contract which waived her right to a jury trial, and that Carrillo was unable to read and understand.  Accordingly, the Court finds *ReadyOne 2* and *ReadyOne 3* distinguishable from the facts at issue here.

Instead, the Court finds that the ROICOM Representative's statements are much like the misrepresentation found in *Delfingen US-Texas, L.P. v. Valenzuela*.  407 S.W.3d 791, 801, 803 (Tex. App. 2013).  In *Delfingen*, an employer representative told a Spanish-speaking employee she would translate "the important parts of the paperwork" and informed the employee that the arbitration agreement she was signing "was the company's policies, such as the attendance policy." *Id.*  The Texas Court of Appeals found that this statement by the employer representative constituted an affirmative misrepresentation.  *Id.* at 803.

Similarly, here, the ROICOM Representative's statement to Carrillo that the Acknowledgement Form was "to register for payroll" and not an arbitration agreement is nearly identical to the representative in *Delfingen*'s misrepresentation that the arbitration agreement was "the attendance policy" and not a waiver of the employee's right to a jury trial.  *Compare* (ECF No. 15, p. 6), *with Delfingen*, 407 S.W.3d at 803.  Accordingly, the Court finds that the ROICOM Representative affirmatively misrepresented the contents of the Acknowledgement Form to Carrillo.

### C.     ROICOM failed to provide the actual Arbitration Agreement to Carrillo

Carrillo asserts that she was "not provided with" and has "never seen" the actual Arbitration Agreement "in English or in Spanish."  (ECF No. 13-1, p. 3).  Although an English and Spanish copy of the Arbitration Agreement was produced in Defendant's Motion, ROICOM does not assert that either document was ever provided or shown to Carrillo.  (ECF No. 8-1, p. 3-12); *see* (ECF No. 15).  Rather, Carrillo has only seen an English version of the Acknowledgement

Form.  (ECF No. 13-1, p. 3).  Accordingly, the Court finds that the evidence establishes that Carrillo was never provided or shown an English or Spanish-language copy of the actual Arbitration Agreement.

> D.   ***The totality of the circumstances in which ROICOM presented the Acknowledgement Form to Carrillo demonstrate procedural unconscionability***

The Court notes that, when taken alone, neither the ROICOM Representative's affirmative misrepresentation to Carrillo nor Carrillo's inability to read the English-language Acknowledgement Form can form the basis for finding procedural unconscionability and denying the motion to compel arbitration.  *See Ridge Natural Resources*, 564 S.W.3d at 133 (holding that "the employer's affirmative misrepresentation to the employee" when taken alone cannot form the basis for finding procedural unconscionability, but the "fact that the employee was illiterate in English and did not receive a Spanish language copy to verify [] the terms of the agreement . . . amplified the employer's misrepresentation into something procedurally unconscionable by taking advantage of the employee's illiteracy"); *ReadyOne Industries, Inc. v. Flores*, 460 S.W.3d 656, 667-68 (Tex. App. 2014) [hereinafter *ReadyOne 4*] (the court rejected the procedural unconscionability defense where the employee was "unable to read English" but there was "no evidence in the record . . . that ReadyOne affirmatively misrepresented the contents of the documents" or that the employee "was prevented by trick or artifice from reading the [provided English or Spanish-language copy of the arbitration agreement]"); *see generally Maravilla*, 783 F. App'x at 395 (Fifth Circuit noting that "[u]nder Texas law, a contract signatory's inability to understand English is not a defense to contract formation.") (quoting *Doskocil Mfg. Co. v. Nguyen*, No. 02-16-00382, 2017 WL 2806322, at *5 (Tex. App. June 29, 2017)); *Lucchese Boot Co. v. Licon*, 473 S.W.3d 390, 403 (Tex. App. 2015) (it is presumed that a party who "has the opportunity

to read an arbitration agreement and signs it, knows its contents.") (quoting *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)).

Instead, the Court must assess "[t]he totality of the circumstances . . . [at] the time the contract was formed" to determine if "the circumstances surrounding the negotiations [were] shocking." *Delfingen*, 407 S.W.3d at 798. Here, there is evidence of both Carrillo's illiteracy in English *and* an affirmative misrepresentation *in addition to* the unrefuted fact that Carrillo never received the Arbitration Agreement in either Spanish or English. *See* (ECF No. 13-1, p. 2-3).

Carrillo argues that the totality of the circumstances, which include the Representative's misrepresentation of the contents of the Acknowledgement Form, Carrillo's reliance on the misrepresentation when signing the Acknowledgement Form, and ROICOM's failure to provide Carrillo with an English or Spanish version of the Arbitration Agreement, supports finding that the Arbitration Agreement is procedurally unconscionable. (ECF No. 13, p. 5). In Plaintiff's Response, Carrillo relies on *Delfingen* as being instructive because, similar to the facts here, the arbitration agreement in that case ". . . was signed based on an affirmative misrepresentation." (*Id.* at 4) (citing *Delfingen*, 407 S.W.3d 791).

In Defendant's Reply, ROICOM argues that the facts in *Delfingen* are distinguishable, because "there is no evidence . . . [the ROICOM Representative] affirmatively misrepresented the *contents* of the documents presented"[10] and the ROICOM Representative "furnished [Carrillo] with a Spanish-language versions [sic] of [the Acknowledgement Form], which was located on the reverse side of the same document [Carrillo] signed."[11] (ECF No. 15, p. 5-6) (emphasis in original).

---

[10] The Court finds that the ROICOM Representative did affirmatively misrepresent the contents of the Acknowledgement Form for the reasons outlined *supra* in Section III(b)(1)(B).

[11] The Court finds that Carrillo was prevented from reading and understanding the Spanish version of the Acknowledgement for the reasons outlined *infra* in Section III(b)(2).

In *Delfingen*, the Spanish-speaking employee was "illiterate as to the English language." 407 S.W.3d at 800.  Further, the employee signed an English version of the arbitration agreement, which she was given a couple days before signing but "did not ask either her daughter or son to translate them for her even though she knew they were important."  *Id.* at 800-01.  The employer never provided a Spanish translation of the arbitration agreement, and instead a representative of the employer said she would translate "the important parts of the paperwork," and told the employee that the arbitration agreement "was the company's policies, such as the attendance policy."  *Id.* at 801, 803.  Based upon the employee's illiteracy as to English and the employer's affirmative misrepresentation, the Texas Court of Appeals found the arbitration agreement to be procedurally unconscionable.  *Id.* at 803.

Similar to *Delfingen*, in *Prevot*, the district court held that the English-language arbitration agreements signed by the non-English-speaking employees were procedurally unconscionable because the employees "were not given a translation of the agreements" and "were pressured into signing them." 133 F. Supp. 2d at 940.  The arbitration agreements were written in English, the plaintiffs could not read English when they signed the arbitration agreement, and the documents were not translated to them; as such, the plaintiffs did not know the nature of the agreement that they were signing, and their superiors told them "not to worry about it and to quickly sign the documents so they could get back to work."  *Id.*[12]

The facts underlying *Prevot* and *Delfingen* closely parallel the instant case.  Similar to the facts underlying the instant case, in *Prevot* and *Delfingen*:  (1) the employees were illiterate in English; (2) they were given documents to sign in English; (3) they were never given a Spanish translation of the arbitration agreement; (4) the employer's representatives misrepresented the

---

[12] In reaching its conclusion, the district court relied upon the plaintiff's testimony through sworn affidavits, which were not disputed by the defendant.  133 F. Supp. at 940, n. 2

importance or contents of the English documents to the employees; and (5) the representatives knew the employees did not understand English. *Prevot*, 133 F. Supp. 2d at 940 (where the employee's superiors told them "not to worry about [the arbitration agreement] and to quickly sign the documents so they could get back to work"); *Delfingen*, 407 S.W.3d at 800-01, 803 (where the employer's representative told the employee that the arbitration agreement "was the company's policies, such as the attendance policy").

Further, while the employees in *Prevot* and *Delfingen* signed a copy of an English version of their arbitration agreements, Carrillo never saw or received a copy of the Arbitration Agreement in either English or Spanish. *Compare Prevot*, 133 F. Supp. 2d at 940, *and Delfingen*, 407 S.W.3d at 796, *with* (ECF No. 13-1, 3). Instead, Carrillo only signed an English version of the Acknowledgement Form. *See* (ECF No. 15-1, p. 14). In fact, there is greater evidence of procedural unconscionability here than in *Delfingen*, because the employee in *Delfingen* was given the English copy of the arbitration agreement to take home a few days before signing the arbitration agreement and thus, had the opportunity to have the English copy of the arbitration agreement translated to her by her children. *Delfingen*, 407 S.W.3d at 800-01. By contrast, Carrillo was not presented with a copy of the English version of the Acknowledgement Form until the time of signing, nor was she ever given a copy of the actual arbitration agreement. Thus, unlike the employee in *Delfingen*, Carrillo did not have the opportunity for a third party to translate either the Acknowledgement Form or the Arbitration Agreement for her. (ECF No. 13-1, p. 2-3).

In sum, Carrillo's inability to read the English-language Acknowledgement Form, the ROICOM Representative's misrepresentation as to the Acknowledgement Form's contents, and ROICOM's failure to provide Carrillo with a copy of the Arbitration Agreement in Spanish or

English, all support the conclusion that the Arbitration Agreement was procedurally unconscionable.

In Defendant's Reply, ROICOM argues that *ReadyOne Industries, Inc. v. Lopez* [hereinafter *ReadyOne 5*] supports its argument that the Arbitration Agreement should be enforced. (ECF No. 15, p. 5) (citing *ReadyOne Industries, Inc. v. Lopez*, 551 S.W.3d 305, 316 (Tex. App. 2018)).  The Court finds *ReadyOne 5* to be distinguishable from the facts here.  In *ReadyOne 5*, a Spanish-speaking employee was informed by someone from Human Resources that documents she signed, which were written in English and included an arbitration agreement, were for "benefits if [the employee] get[s] hurt on the job." *Id.* at 315.  These documents were not translated into Spanish for the employee, but "[t]he evidence established that [the employee] was provided with *both* English and Spanish-language versions of the documents at issue," including the arbitration agreement. *Id.* (emphasis added).  Further, the employee in *ReadyOne 5* was not completely illiterate as to English but instead had "a below second grade reading level . . . ." *Id.*  In contrast to the facts in *ReadyOne 5*, here, Carrillo was never provided the Arbitration agreement in English or Spanish and Carrillo was illiterate in English. *See* (ECF No. 13-1, p. 2-3).  Accordingly, the Court finds that *ReadyOne 5* is distinguishable on these facts.

Therefore, based on the totality of the circumstances, which include Carrillo's inability to read the English-language Acknowledgement Form, the ROICOM Representative's misrepresentation as to the Acknowledgement Form's contents, and ROICOM's failure to provide Carrillo with a copy of the Arbitration Agreement in Spanish or English, the Court finds that there is sufficient evidence that Carrillo has met her burden of proving that the Arbitration Agreement was procedurally unconscionable.

### 2.    *Acknowledgement Form with Attached Spanish Version*

ROICOM asserts for the first time in Defendant's Reply that ROICOM "furnished [Carrillo] with a Spanish-language versions [sic] of [the Acknowledgement Form], which was located on the reverse side of the same document she signed."  (ECF No. 15, p. 5); *see also* (ECF No. 15-1, p. 3) ("[The Acknowledgement Form] is a two – sided [sic] document in English on one side and Spanish on the other.  Ms. Carrillo signed the English side . . . . However, the document signed by Ms. Carrillo contained both an English side and a Spanish side.").[13]

---

[13] Carrillo asserts in Plaintiff's Surreply that the evidence of the Spanish version of the Acknowledgement Form should be stricken, since it was improperly raised for the first time in Defendant's Reply.  (ECF No. 19, p. 2).  In the alternative, Carrillo asks that the Court find that the evidence of the Spanish version of the Acknowledgement Form is not credible or reliable to support a finding that Carrillo was presented with the Acknowledgement Form in Spanish.  (*Id.* at p. 4).

Carrillo asserts in Plaintiff's Surreply that ROICOM's counsel sent the same English Acknowledgement Form found in Defendant's Motion filed on July 27, 2020, to Carrillo's counsel by email on July 14, 2020.  (*Id.* at p. 6) (Carrillo's counsel also contends that ROICOM's counsel provided in the same email a one-sided English acknowledgement form of ROICOM in an unrelated case).  Carrillo alleges that ROICOM "miraculously found an Acknowledgement Form that was two-sided" "only after Carrillo addressed the impropriety of [ROICOM's] use of an English Acknowledgement Form and misleading statements about the same."  (*Id.*).  ROICOM counters Carrillo's allegations by asserting it "is not clairvoyant" and that "[i]t was impossible for [ROICOM] to anticipate and respond to [Carrillo's affirmative defense of procedural unconscionability] in [Defendant's Motion] and include all the evidence possible in rebuttal to a defense not yet raised."  (ECF No. 21, p. 4-5).  ROICOM asserts that it was only after Plaintiff's Response that ROICOM's counsel "learned the Spanish — language [sic] version of the Acknowledgement Form was located on the reverse side of the English — language [sic] version that [Carrillo] had signed."  (*Id.* at p. 4).  ROICOM's counsel did not previously produce the Spanish-language version in his prior emails or Defendant's Motion because the Acknowledgement Form was "copied and electronically transmitted to [ROICOM's counsel] as one page [sic] documents, then stored electronically in PDF format as such."  (ECF No. 21, p. 8).  Further, ROICOM's counsel asserts that he "was not made aware of Ms. Carrillo's contention that she did not speak English until [Plaintiff's Response containing Carrillo's affidavit]," and "[i]t was only thereafter that [ROICOM's counsel] came to learn that the original Acknowledgement [Form] was a two-sided document."  (*Id.* at p. 2).

The Court notes that ROICOM provides no explanation as to how it learned of the Spanish-language Acknowledgement Form's existence after the Plaintiff's Response.  *See* (*Id.* at p. 2).  Further, ROICOM provides no explanation as to why Alvarez, the "custodian of records for personnel files of ROICOM . . . and for documents pertaining to Blanca Carrillo," made no reference in his original affidavit to a Spanish-language Acknowledgement Form or that the Acknowledgement Form was two-sided.  *See* (ECF No. 21); (ECF No. 8-1, p. 1-2, 13) ("Exhibit '2' is a true and correct copy of a Receipt and Arbitration Acknowledgement dated May 20, 2019, with what appears to be the signature of Blanca Carrillo."); *cf.* (ECF No. 15-1, p. 3) (Alvarez asserting in his supplemental affidavit that the Spanish side was not produced in his previous affidavit because "[t]here was a copying error and the Spanish side was inadvertently not included.").  Although Alvarez explains how the Spanish-language Acknowledgement Form was not *physically* included inadvertently due to a "copying error," Alvarez does not explain why his *description* of the Acknowledgement Form did not mention a Spanish-language version.  Further, ROICOM's counsel does not explain why the Spanish-language Arbitration Agreement was included in Alvarez's initial affidavit when ROICOM's counsel was purportedly unaware that Carrillo "did not speak English" until Plaintiff's Response.  *See* (ECF No. 21).  Finally, there is no indication on the face of the English side or Spanish side of the Acknowledgement Form, either

"[T]he failure to read a contract does not ordinarily void a contract absent fraud or misrepresentations." *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 603 (Tex. App. 2008); *see also Fleetwood*, 280 F.3d at 1077 (court found that "allegations of misrepresentations and pressure to sign the documents quickly . . . [were] insufficient to establish [procedural] unconscionability" when the parties were fully capable of understanding the agreement). Under Texas state law, "absent proof of mental incapacity,[14] a person who signs a contract is presumed to have read and understood the contract *unless he was prevented from doing so by trick or artifice*." *Delfingen*, 407 S.W.3d at 801 (emphasis added). A "trick or artifice" is conduct by a party that prevents or blocks another party from reading the contract, with "[t]he key inquiry [being] whether [the signing party] was afforded the opportunity to read (or have read to him) the document he was signing, not whether [the drafting party's] alleged statements about the document's contents were accurate." *Westergren v. National Property Holdings, L.P.*, 409 S.W.3d 110, 151 (Tex. App. 2013) (Frost, J., dissenting), *aff'd in part*, *rev'd in part*, 453 S.W.3d 419, 425 (Tex. 2015) (reversing on issue of "trickery or artifice," citing J. Frost's dissent).

It is clear that a misrepresentation alone does not equate to a "trick or artifice" that prevents a party from reading or understanding a contract. *See*, *e.g.*, *Harvey v. Elder*, 191 S.W.2d 686, 689 (Tex. Civ. App. 1945) (holding that a doctor's oral representation that a document was a receipt and his failure to disclose that it contained releases of the patient's claims did not constitute a "trick or artifice" that prevented the patient from reading the release before signing it); *see also Indemnity Ins. Co. of North America v. W.L. Macatee & Sons*, 101 S.W.2d 553, 556-57 (1937) (the court

---

by signature, date, writing, or other markings, that Carrillo received the Spanish-language Acknowledgement Form produced by ROICOM. *See* (ECF No. 15-1, p. 14-15). However, the Court finds it is unnecessary to decide the issue of whether the Acknowledgement Form Carrillo signed had a Spanish reverse side, since the Court considers both factual alternatives and reaches the same conclusion on the issue of procedural unconscionability.

[14] Neither party here suggests Carrillo lacked mental capacity. *See* (ECF No. 15, p. 5) ("Plaintiff does not claim she was mentally incapacitated when she signed the Acknowledgement [Form].")); (ECF No. 13).

found no evidence that the representative "did anything to mislead [the laborers] who signed," and the representative "turn[ing] back . . . sheets for [the laborers'] convenience" did not constitute a "trick or artifice [used] to induce them to sign without reading" when the laborers "could plainly see that . . . sheets had been folded back and could have examined such . . . sheets by turning them down or asking [the representative] to do so . . . [in fact, one of the laborers] sometimes turned them back himself"). As such, the Court finds that the misrepresentation of the Acknowledgement Form's contents by ROICOM's Representative alone is not enough to establish a "trick or artifice."

Even so, the Court now considers the alternative factual scenario raised in Defendant's Reply: namely, that Carrillo was handed a two-sided Acknowledgement Form by ROICOM's Representative, the back side of which was in Spanish. For the reasons set forth below, the Court finds that the combination of (1) the Representative's conduct, (2) the format in which the Acknowledgement Form was drafted, and (3) ROICOM's failure to provide Carrillo with a copy of the Arbitration Agreement, constitutes a "trick or artifice" that prevented Carrillo from reading or having the opportunity to read the Spanish-language Acknowledgement Form.

### A.   *The ROICOM Representative's conduct and misrepresentation prevented Carrillo from reading the Spanish-language Acknowledgement Form*

ROICOM argues in Defendant's Reply that "there is no evidence [Carrillo] was prevented by trick or artifice from reading [the Spanish version on the back of the Acknowledgement Form] and that "[t]here is no evidence that a coercive environment existed." (ECF No. 15, p. 6). ROICOM argues that Carrillo's affidavit is insufficient to establish procedural unconscionability since Carrillo "was provided with an English and Spanish version of the Acknowledgement that

she signed"[15] and that, "therefore Plaintiff is presumed to have read and understood the documents given to her."  (ECF No. 15, p. 6).

Despite ROICOM's conclusory contentions, it is clear to the Court that not only did the ROICOM Representative never inform Carrillo that a Spanish version of the Acknowledgement Form existed on the backside of the English version, the ROICOM Representative affirmatively misled Carrillo as to the nature and the contents of the Acknowledgement Form.  Although a misrepresentation alone does not equate to a "trick or artifice" that prevents a party from reading a contract, it is undisputed that Carrillo did not see, read, or was even made aware of the Spanish backside of the Acknowledgement Form.  *See* (ECF No. 13-1); (ECF No. 15).

The ROICOM Representative's statements and conduct prevented Carrillo from reviewing the Spanish-language Acknowledgement Form.  The Representative knew Carrillo only spoke and understood Spanish and knew that the Acknowledgement Form was a two-sided document with a Spanish side, but the Representative chose to only present and obtain Carrillo's signature on the English side.  *See* (ECF No. 15-1, p. 14-15).

Further, knowing Carrillo could not read or understand the English side of the Acknowledgement Form, the ROICOM Representative told Carrillo in Spanish that Carrillo had to sign the document "to be able to register and be put on payroll with ROICOM."  (ECF No. 13-1, p. 2).  ROICOM does not provide any evidence that the Representative alerted Carrillo to the existence of a Spanish-language backside or that the Representative gave Carrillo an opportunity to review it.  *See generally* (ECF No. 15-1, 2-3).  In fact, Carrillo never contends that she chose not to read the Spanish-language Acknowledgement Form at the time of signing; rather, she argues that she was never given the Spanish-language Acknowledgement Form in the first place, nor

---

[15] Contrary to ROICOM's statement here, Carrillo only signed the English version of the Acknowledgement Form. *See* (ECF No. 15-1, p. 14).

informed of its existence.  (ECF No. 13-1, p. 2-3); *see Forshey v. Del*, No. 01-19-00421-CV, 2020 WL 1856214, at *4 (Tex. App. Apr. 14, 2020) ("[I]n contrast, [the employee] does not argue that she was not aware of the arbitration provision because it was on another page.  Rather, she argues that *she was never given the page containing the arbitration provision in the first place*.") (emphasis added).

Finally, the Court notes that the Acknowledgement Form produced by ROICOM in Defendant's Reply was kept as a record "in the course of ReadyOne's regularly conducted business activity," and ROICOM provides no evidence that Carrillo was given a copy of the signed Acknowledgement Form to keep for her records.  *See* (*id.*).  Thus, the meeting with the ROICOM Representative was apparently Carrillo's only opportunity to review the Acknowledgement Form.

Based on the facts outlined above, the Court finds that the ROICOM Representative's conduct and misrepresentation prevented Carrillo from reading the Spanish backside of the Acknowledgement Form.

B.     ***The format of the Acknowledgement Form prevented Carrillo from reading the Spanish version of the Acknowledgement Form and gave credibility to the ROICOM Representative's misrepresentation***

Next, the Court finds that the format of the Acknowledgement Form:  (1) prevented Carrillo from reading or having the opportunity to read the Spanish version of the Acknowledgement Form; and (2) gave credibility to the ROICOM Representative's misrepresentation.

First, the Court notes that the presence of the Spanish-language version on the back side of the Acknowledgement Form is not, by itself, enough to prevent an employee from reading and understanding it.  Texas state courts have found that contract language on the back side of a page alone is not inherently "hidden" as to constitute a "trick or artifice."  *See*, *e.g.*, *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) ("The agreement is a single page with text on both

sides.  Nothing is 'hidden' on the back side of the document."); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 199 (Tex. App. 2003) (court did not find the "contract's arbitration provision so inconspicuous that it is unconscionable" where language on the front page encouraged the signer to review the reverse side).

In previous cases where the failure to read an agreement did not excuse a party from arbitration, courts have noted that the pertinent documents contained some clear reference to other pages or paragraphs of the contract.  In *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, the District Court for the Northern District of Texas rejected plaintiff's lack of mutual assent defense to an arbitration agreement where the signature block stated "I acknowledge by my signature that I have read and understand the *front and back* of this application to agree to binding arbitration as described on *the back of this page*."  995 F. Supp. 2d 587, 610 (N.D. Tex. 2014) (emphasis added) (emphasis in original omitted); *see also D.R. Horton-Texas, Ltd. v. Drogeseth,* No.  02-12-00435-CV, 2013 WL 3377121, at *2 (Tex. App. July 3, 2013) (court rejected argument that party was prevented from reading an arbitration agreement on the reverse side of a contract when the front page contained "paragraphs 1 through 11 and include[d] signature lines for both [parties].   Just above the executed signature lines, the contract state[d], '**PARAGRAPHS 12 THROUGH 26 ON THE REVERSE SIDE CONSTITUTE A PART OF THIS CONTRACT.**'") (emphasis in original); *AutoNation USA Corp.*, 105 S.W.3d at 199 (court did not find the "contract's arbitration provision so inconspicuous that it is unconscionable" when purchase agreement consisted of single page, front and back, and the paragraph directly above customer signature line on the front page stated that the signer "*has read and understands the Terms and Conditions . . . (including the Additional Terms and Conditions set forth on the reverse*

. . . )," and additional language on front page stated "Purchaser is encouraged to review . . . the Additional Terms and Conditions set forth on the reverse side hereof") (emphasis in original).

Unlike *Innova Hosp.*, the Court finds that the Acknowledgement Form here does not contain any clear reference that a Spanish version of the Acknowledgement Form, or that any text, was located on the backside of the Acknowledgement Form.  (ECF No. 15-1, p. 14-15).  There is no language on the Acknowledgement Form indicating that the signer should review the "front and back" or the language "on the reverse side" of the Acknowledgement Form.  *Compare* (*id.*), *with Innova Hosp.*, 995 F. Supp. 2d at 610, *and D.R. Horton Texas*, 2013 WL 3377121, at *2. Further, even if there had been some clear language on the English side of the Acknowledgement Form indicating there was text on the other side, Carrillo "cannot read English and [would] not know" what the language on the English side of the Acknowledgement Form would have stated. (ECF 13-1, p. 3).

Absent a clear reference to other pages or paragraphs, courts have held that "the failure to read a contract does not [] void a contract" when the format of the contract "put[s] a reasonable person on notice that there were additional terms on the back of the signature page."  *In re Green Tree*, 275 S.W.3d at 603.  In *In re Green Tree*, the Texas Court of Appeals rejected the purchaser's procedural unconscionability defense where the signer was not "incapable of reading or lack[ing] the ability to understand the agreement[, e]ach page of the contract was numbered[,] and the signature page was marked '*Page 3 of 4.*'"  *Id.*  (emphasis added).  The contents of a contract must place the signing party, "at the very least, on notice to inquire about any supposedly missing pages or paragraphs of which the signer might not be aware."  *Forshey*, 2020 WL 1856214, at *5.

Unlike *In re Green Tree*, here, there is nothing on the face of the English side of the Acknowledgement Form that would have given Carrillo notice that a Spanish-language

Acknowledgement Form, or that any text, was on the backside.  *See* (ECF No. 15-1, 14-15).  There is no indication of "Page 1 of 2" or an arrow directing the reader to turn the page over.  *Compare* (*id.*), *with In re Green Tree*, 275 S.W.3d at 603.  Therefore, the Acknowledgement Form does not alert a normal reader that it is a two-sided document.[16]  Further, even if there had been some indication on the face of the English-language Acknowledgement Form that there was text on the back of the document, Carrillo had no reason to suspect the backside would be in Spanish and that she would be able to read and understand it.  ROICOM has not produced any evidence to suggest Carrillo was provided any notice of the existence of the Spanish version besides a general statement in Defendant's Reply that the Spanish version simply existed.  *See* (ECF No. 15, p. 6).

Further, unlike the party in *In re Green Tree*, Carrillo was incapable of reading the English version of the Acknowledgement Form and relied upon the ROICOM Representative's misrepresentation that the contents of the document pertained to registering for payroll and not to an arbitration agreement.  *Compare In re Green Tree*, 275 S.W.3d at 603 ("There is no evidence [defendant] misrepresented the existence of the arbitration clause or otherwise engaged in deception.  Nor is there any evidence [plaintiff] is incapable of reading or lacked the ability to understand the agreement."), *with* (ECF No. 13-1, p. 3); *see also Innova Hosp.*, 995 F. Supp. 2d at 612-13 (there was no evidence that plaintiff was unable to read the agreement, and plaintiff's arguments of negligent misrepresentation pertained to the extent of the scope of the agreement); *Ridge Natural Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 133 (Tex. App. 2018) ("there is no evidence [the defendant] prevented the [plaintiffs] from reading the contract

---

[16] In fact, ROICOM's own counsel filed Defendant's Motion without "know[ing] the original forms were two-sided documents," even though ROICOM's counsel had a distinct advantage over Carrillo insofar as he could read the English contents of the Acknowledgement Form while Carrillo could not.  (ECF No. 21, p. 9) ("It was only thereafter [reading Carrillo's affidavit] that I came to learn that the original Acknowledgement [Form] was a two-sided document.").

by trick or artifice"); *D.R. Horton Texas*, 2013 WL 3377121, at *4 (court held that defendant not pointing out the arbitration clause on the back of the contract was not equal to a misrepresentation). The Court finds that the ROICOM Representative's misrepresentation further quelled any "notice to inquire" from Carrillo regarding any "missing pages or paragraphs" of which she was unaware. *See Forshey*, 2020 WL 1856214, at *5.

The Court next finds that the Acknowledgement Form was drafted in a manner that gave credibility to the ROICOM Representative's misrepresentation that the document was to "register for payroll," which strengthened Carrillo's reliance on the misrepresentation. The Acknowledgement Form was a single sheet of paper with roughly half of a page of substance while the other half of the page contained the signature block. (ECF 15-1, p. 3, 14). In contrast, arbitration agreements are typically longer than half of a page. *Compare* (*id.* at p. 14), *with* (*id.* at p. 4-8) (showing the Arbitration Agreement being five pages, at least 3 pages if printed front and back, with four of the pages completely full of substantive text).

Additionally, there are no significant variations in the font of the text in the Acknowledgement Form to alert an employee that the document is of greater importance than routine registering for payroll. (*Id.* at p. 14). Excluding the titles and headings, the substantive body of the Acknowledgement Form has no text that is in all capital letters or underlined, and only part of one sentence is bolded. (*Id.*). Further, the signature block, which covers roughly half of the page, contains Carrillo's signature, the date of her signature (11-15-2017), her name, her Social Security Number, her work location (ROICOM), the Department (RC), the signature of a witness from Human Resources, and the date of the witness's signature (11-15-2017). (*Id.*). Requiring an employee to provide their name, signature, Social Security number, work location, and department is more indicative of a document necessary for payroll than a document agreeing to arbitration and

waiving an employee's right to jury trial.  (*Id.*).  Therefore, the Court finds that the contents of the signature block, in combination with the brevity of the document and the lack of any variation in the font to draw attention to the importance of the language in the body of the Acknowledgement Form, all support the conclusion that the Acknowledgement Form was drafted in a manner consistent with the ROICOM Representative's statement that the document was related only to payroll.  *See* (ECF 13-1, p. 2).

      **C.**      ***ROICOM's failure to provide Carrillo with the actual Arbitration Agreement denied her the opportunity to verify its contents***

      Finally, ROICOM did not provide the actual Arbitration Agreement to Carrillo despite the fact that ROICOM had both an English and Spanish version of the Arbitration Agreement available.  (ECF No. 15-1, p 3-13).  ROICOM chose not to provide Carrillo with a copy of the actual Arbitration Agreement in *either* language.  (ECF No. 13-1, p. 3).  Instead, ROICOM elected to have Carrillo sign an English version of the Acknowledgement Form and not the Arbitration Agreement itself.  *Compare* (ECF No. 15-1, p. 14), *with* (*id.* at p. 4-13).  Not only was Carrillo not informed that an Arbitration Agreement existed, the Court finds that Carrillo had no reason to inquire into the contents of the Arbitration Agreement that was never presented to her.  By not providing a copy of the actual Arbitration Agreement, ROICOM denied Carrillo the opportunity to verify whether the terms of the Arbitration Agreement were consistent or inconsistent with the Representative's statement regarding the contents of the Acknowledgement Form.  *See Ridge Natural*, 564 S.W.3d at 133 (holding that not providing a Spanish-language copy to an employee who is illiterate in English "amplif[ies] the employer's misrepresentation into something procedurally unconscionable by taking advantage of the employee's illiteracy").

D. ***The combined effect of ROICOM's actions prevented Carrillo from reading the Spanish version of the Acknowledgement Form***

In sum, the combined effect of the ROICOM Representative's conduct and misrepresentation of the contents of the Acknowledgement Form, the format of the Acknowledgement Form that substantiated the misrepresentation, and ROICOM's failure to provide a copy of the Arbitration Agreement, rises to the level of a "trick or artifice" that prevented Carrillo from reading or understanding the Spanish-language version of the Acknowledgement Form. *See Delfingen*, 407 S.W.3d at 801 ("a person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice").

Further, the circumstances here suggest that "overreaching [and] sharp" practices were used by ROICOM to obtain a signature from an employee with a total lack of knowledge, or "ignorance," of the language used in their Acknowledgement Form, which ROICOM could later use to attempt to compel arbitration from that employee. *See American Stone Diamond*, 934 F. Supp. at 844 ("A court may find procedural unconscionability if the plaintiff presents evidence of the [company's] overreaching or sharp practices' combined with the [employee's] ignorance or inexperience.") (internal quotes omitted). Based on the totality of the uncontroverted evidence surrounding the signing of the Acknowledgement Form, the Court finds the circumstances shocking such that the Acknowledgement Form and Arbitration Agreement were procedurally unconscionable, even if the Acknowledgement Form contained a Spanish-language version on the back.

3. ***Summary***

The totality of the circumstances, including Carrillo's inability as a Spanish-speaker to read and understand English, Carrillo never receiving a Spanish or English copy of the Arbitration Agreement, and the Representative presenting the Acknowledgement Form to Carrillo only in

English while misrepresenting it as a document to register for payroll, support the finding that the Acknowledgement Form is procedurally unconscionable. Assuming, *arguendo*, that the Acknowledgement Form had a Spanish-language version on the backside, the Court finds that Carrillo was still prevented from reading or noticing the Spanish-language version due to the "trick or artifice" of ROICOM and the ROICOM Representative. Accordingly, the Court further finds that the Arbitration Agreement between ROICOM and Carrillo is procedurally unconscionable.

## IV.   CONCLUSION

For the foregoing reasons, although the Court finds that ROICOM met its initial burden of proof that the Arbitration Agreement on its face establishes an agreement between ROICOM and Carrillo, the Court finds that the Acknowledgement Form and, by extension, the Arbitration Agreement, are procedurally unconscionable. Because the Arbitration Agreement between Carrillo and ROICOM is procedurally unconscionable, the Court finds that ROICOM's Motion to Compel Arbitration should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration is **DENIED.**

**SIGNED** and **ENTERED** this 14th day of September, 2020.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**